No. 22-2146

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

v.

**SAMUEL RUBEN CARAWAY,**

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:16-CR-30024-NJR-09
The Honorable Nancy J. Rosenstengel, Chief District Court Judge

# BRIEF FOR APPELLEE UNITED STATES

RACHELLE AUD CROWE
  *United States Attorney*

DAVID D. DEAN
  *Assistant United States Attorney*
  *Office of the United States Attorney*
  *Nine Executive Drive*
  *Fairview Heights, Illinois 62208*
  *(618) 628-3700*

No. 22-2146

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

v.

**SAMUEL RUBEN CARAWAY,**

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:16-CR-30024-NJR-009
The Honorable Nancy J. Rosenstengel, Chief District Court Judge

# BRIEF FOR APPELLEE UNITED STATES

# TABLE OF CONTENTS

Table of Contents ............................................................................................... i

Table of Authorities .......................................................................................... ii

Jurisdictional Statement .....................................................................................1

Statement of the Issues .......................................................................................3

Statement of the Case .........................................................................................4

Summary of Arguments.....................................................................................19

Arguments

      I.    The district court did not clearly err in finding that Caraway willfully obstructed justice. ............................................................................... 21

      II.   Even if the district court erred in applying the obstruction of justice enhancement, any error was harmless because the District Court made clear it would have imposed the same sentence regardless of the outcome of the contested objection............................................................ 36

Conclusion .........................................................................................................42

Certificate of Compliance .................................................................................43

Certificate of Service.........................................................................................44

# TABLE OF AUTHORITIES

Cases                                                                          Page(s)

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985) ........................................................... 21

*Iqbal v. Patel*, 780 F.3d 728 (7th Cir. 2015) ................................................................................. 32

*Pinkston v. Madry*, 440 F.3d 879 (7th Cir.2006) ......................................................................... 21

*United States v. Abbas*, 560 F.3d 660 (7th Cir. 2009) ...................................................... 36, 37, 42

*United States v. Alvarez-Carvajal*, 2 F.4th 688 (7th Cir. 2021) .................................................. 37

*United States v. Arceo*, 535 F.3d 679 (7th Cir. 2008) ...........................................................passim

*United States v. Asbury*, 27 F.4th 576 (7th Cir. 2022) .......................................................... 37, 40

*United States v. Bolden*, 279 F.3d 498 (7th Cir. 2002) ................................................................. 33

*United States v. Bravo*, 26 F.4th 387 (7th Cir. 2022) ........................................................... 37, 40

*United States v. Cisneros*, 846 F.3d 972 (7th Cir. 2017) .......................................................passim

*United States v. Clark*, 906 F.3d 667 (7th Cir. 2018) .................................................................. 36

*United States v. Curb*, 626 F.3d 921 (7th Cir. 2010) ................................................................... 26

*United States v. Draves*, 103 F.3d 1328 (7th Cir. 1997) ........................................... 21, 26, 32, 35

*United States v. Elder*, 900 F.3d 491 (7th Cir. 2018) .................................................................. 37

*United States v. Foster*, 701 F.3d 1142 (7th Cir. 2012) ............................................................... 36

*United States v. Hines-Flagg*, 789 F.3d 751 (7th Cir. 2015) .................................................. 37, 38

*United States v. Kelly*, 314 F.3d 908 (7th Cir. 2003) ..................................................................... 4

*United States v. Lovies*, 16 F.4th 493 (7th Cir. 2021) ................................................................. 38

*United States v. Nduribe*, 703 F.3d 1049 (7th Cir. 2013) .....................................................passim

*United States v. Porter*, 145 F.3d 897 (7th Cir. 1998) ...................................................... 22, 25, 26

*United States v. Ranjel*, 872 F.3d 815 (7th Cir. 2017) ................................................................. 27

*United States v. Skaggs*, 25 F.4th 494 (7th Cir. 2022) ............................................................ 38, 41

*United States v. Strache*, 202 F.3d 980 (7th Cir. 2000) ................................................................. 4

*United States v. Teta*, 918 F.2d 1329 (7th Cir. 1990)..............................................32, 33

*United States v. Williams*, 294 F. App'x 336 (9th Cir. 2008)................................... 22

## Statutes

18 U.S.C. § 1952(a)(3) ...........................................................................passim

18 U.S.C. § 3231 ......................................................................................... 1

18 U.S.C. § 3553 ..................................................................... 17, 38, 40, 41

18 U.S.C. § 3553(a) ............................................................................passim

18 U.S.C. § 3742(a)(3) ................................................................................ 2

21 U.S.C. § 841(a)(1) .............................................................................. 1, 7

21 U.S.C. § 846 ....................................................................................... 1, 7

28 U.S.C. § 41 ......................................................................................... 1, 2

28 U.S.C. § 1291 ......................................................................................... 2

## Other

Fed.R.App.P. 4(b)(1)(A)(i) ........................................................................... 1

USSG §3B1.1(a) ........................................................................................ 12

USSG §3C1.1 .....................................................................................passim

## JURISDICTIONAL STATEMENT

Appellant's Jurisdictional Statement is not complete and correct.

This is a direct appeal from the judgment of conviction and sentence of the United States District Court for the Southern District of Illinois entered on June 22, 2022.

On January 4, 2018, a Federal Grand Jury sitting in Benton, Illinois, returned a superseding indictment charging Appellant Samuel Ruben Caraway (hereinafter "Caraway") with Conspiracy to Distribute, and Possess with Intent to Distribute, Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 846, R. 441.[1] The district court possessed subject matter jurisdiction over these offenses pursuant to 18 U.S.C. § 3231.

On March 23, 2022, Caraway entered an open guilty plea to all charges contained in the superseding indictment. R. 504.

On June 21, 2022, Caraway was sentenced to a total term of 360 months in prison, a fine of $5,000, a term of 5 years' supervised release, and a $100 special assessment. R. 534. Written judgment was entered by the district court on June 22, 2022. R. 538.

On June 29, 2022, Caraway timely filed a notice of appeal. R. 540; *see also* Fed.R.App.P. 4(b)(1)(A)(i). This court's jurisdiction over this appeal is founded upon 28

---

[1] References to documents in the Record on Appeal are designated herein as "R." followed by the appropriate number for the document (i.e. R. 1); references to transcripts are designated by the proceeding to which they relate followed by the relevant page number(s) (i.e. "Plea Tr. at ___" or "Sent. Tr. at ___"); references to appellant's brief are designated as "Appellant's. Br., __"; references to the Presentence Investigation Report are designated "PSR" followed by the relevant paragraph or page number.

U.S.C. §§ 41 and 1291.   Because Caraway seeks review of his sentence, this court also has

jurisdiction pursuant to 18 U.S.C. § 3742(a)(3).

## STATEMENT OF THE ISSUES

I.     Whether the district court clearly erred in finding that Caraway obstructed justice by willfully evading arrest for three and a half years, where the evidence shows that Caraway abruptly cut off communications with the Government after learning his indictment was imminent, avoided known locations and associates, refrained from traceable commercial activity, and repeatedly provided false identification at the time of his eventual arrest because he knew he was wanted by law enforcement?

II.    Whether, even if the district court did clearly err, any such error was harmless, where the district court unequivocally stated that it would have imposed the same sentence even if its ruling on the obstruction enhancement was incorrect, and thoroughly explained its reasoning for the parallel result using the § 3553(a) sentencing factors?

**STATEMENT OF THE CASE**

**A.     Factual Background**

**1.     DEA Investigation**

In January 2015, agents with the Drug Enforcement Administration (DEA) were investigating a major drug trafficking operation involving the distribution and transportation of cocaine between Houston, Texas, and several cities throughout the Midwest, including St. Louis, Indianapolis, and O'Fallon, Illinois.   PSR ¶ 12[2]   The agents learned that Samuel Ruben Caraway, also known as "Big Sam," was the principal supplier of cocaine for this drug trafficking conspiracy.   *Id.*

Caraway had organized a large-scale smuggling operation across several states moving multi-million-dollar quantities of cocaine.   In addition to the cities identified above, Caraway's operation also distributed cocaine to buyers in Cincinnati, Ohio, Atlanta, Georgia, and Louisiana.   PSR ¶ 14.   Caraway's source of supply was the Mexican Gulf Cartel.   PSR ¶ 13.   He would receive large quantities of cocaine from his cartel connections, and then distribute the drugs via couriers from Houston, where he resided, to buyers throughout the country.   *Id.*   Caraway's couriers transported the drugs in rental vehicles, paid for by Caraway, and then drove those rental vehicles back

---

[2]     The Government recognizes that the contents of PSRs are generally confidential. *See United States v. Kelly*, 314 F.3d 908, 913 (7th Cir. 2003).   Where, however, an appellant challenges a sentencing decision and the district court adopted the PSR as its findings of fact in support of its sentence, as in this case, it is appropriate to cite to relevant portions of the PSR as necessary to provide a factual background for the district court's sentence and to address appellant's arguments on appeal. *Id.* (*citing United States v. Strache*, 202 F.3d 980, 987 (7th Cir. 2000)).

to Texas carrying the cash proceeds from drug sales in other states.   *Id.*

### 2.   Caraway's co-conspirators

Caraway recruited numerous individuals to join his drug-trafficking operation. PSR ¶ 14.   His "right-hand man" was Victor Johnson.   PSR ¶ 15.   Johnson was in charge whenever Caraway was not present and oversaw deliveries.   *Id.*; PSR ¶ 29. Caraway also recruited his brother, Samuel Monroe, into the organization.   PSR ¶ 24. Monroe was a courier and helped transport multiple shipments of cocaine from Houston to St. Louis and Indianapolis.   *Id.*   Johnson recruited Jamie Green to be a driver for the drug-trafficking operation.   PSR ¶ 15.   Monroe recruited Dana Bell, also as a driver. PSR ¶ 18.   In addition to driving, Bell also rented vehicles and arranged hotel rooms. *Id.*   Rodney Smith was another driver for the drug-trafficking operation.   PSR ¶ 41. His principal role was to drive a decoy "tail car" whenever cocaine was being transported from Houston to St. Louis or Indianapolis.   PSR ¶ 23.

Aston Allison was another Houston-based drug dealer whose source of cocaine supply was Caraway.   PSR ¶ 12. Allison purchased cocaine from Caraway for distribution in the St. Louis metropolitan area.   PSR ¶ 30.   Nahum Shibeshi was Allison's primary courier.   PSR ¶ 16.   Terrance Miles introduced Allison to Caraway and brokered multiple sales of cocaine from Caraway to Allison.   PSR ¶ 30.

### 3.   Saint Louis drug deal

In November 2015, Victor Johnson, lead a group of couriers transporting a 37-kilogram shipment of cocaine, supplied by Caraway, from Houston to St. Louis and

Indianapolis. R. 505; PSR ¶ 20. The group accompanying Johnson included Samuel Monroe, Jamie Green, Rodney Smith, and Dana Bell. PSR ¶ 20. The group had arranged to deliver three kilograms of cocaine in St. Louis to Allison and Miles. Unbeknownst to the conspirators, the DEA had learned, through a confidential source (CS), about Allison's drug-dealing operation in early 2015. PSR ¶ 12. As a result, the DEA was aware of the planned transaction between Caraway's couriers and Allison.

On December 2, 2015, Terrance Miles received three kilograms of cocaine from Jamie Green, as planned. PSR ¶ 20. When Miles delivered the cocaine to Allison, he determined that one of the kilos of cocaine was poor quality. R. 505. On December 3, Johnson met with Miles in the parking lot of the St. Louis Galleria mall for a second transaction—to receive payment for the two kilos of cocaine already exchanged and exchange the poor-quality kilo for a better one. *Id.*; PSR ¶ 20. This time, DEA agents were waiting. *Id.*

Agents maintained surveillance while the transaction was completed, and then arrested all five of Caraway's couriers who were present, including Victor Johnson. *Id.*

### 4. Seizure of drugs and proceeds

Agents searched the two vehicles the couriers had arrived in and recovered the kilogram of cocaine. PSR ¶ 21. Agents also found multiple hotel room keys for a St. Louis-area hotel. *Id.* At the hotel, agents located Dana Bell, who admitted that she had rented all of the hotel rooms and gave consent to search. *Id.* In one of the hotel rooms, agents found two more kilograms of cocaine and a briefcase containing $508,330 in cash. Agents also found a .38 caliber revolver. *Id.* Rodney Smith later admitted ownership

of this firearm.    *Id.*

Agents learned that three vehicles parked at the hotel had been rented in Texas—two by Victor Johnson and one by Smith.    PSR ¶ 22.    When these vehicles were searched, agents found $319,920 hidden in the spare tire of one of the vehicles and $339,380 in the spare tire of another. *Id.* The third vehicle was missing its spare tire. Altogether, agents seized $1,167,630 in cash from the hotel rooms and vehicles.    *Id.*

### 5.    Co-conspirator indictment, interviews, and guilty pleas

Caraway's co-conspirators (Johnson, Monroe, Green, Smith, Bell, Allison, Miles, and Shibeshi) were indicted by a grand jury in the Southern District of Illinois on February 18, 2016.    R. 1.    All were charged with one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.    *Id.*    Allison, Miles, and Shibeshi were also charged with one count of interstate travel in support of racketeering, in violation of 18 U.S.C. §§ 1952(a)(3) and 2.    *Id.*    Each of the co-conspirators was arrested or appeared on a summons in this case by March 25, 2016.    R. 25, 26, 53, 54, 65, 66, 69. Caraway's co-conspirators participated in post-arrest interviews with law enforcement regarding their involvement in the cocaine-trafficking conspiracy.    PSR ¶ 23-32.    They uniformly identified Caraway as the supplier of cocaine and leader of the drug-trafficking organization.    *Id.*

On June 16, 2016, Shibeshi became the first co-conspirator to plead guilty, pursuant to a plea agreement with the Government.    R. 111.    By early 2017, the remaining co-conspirators, one-by-one, each pleaded guilty.    R. 111, 141, 153, 159, 169, 174, 181.    The last co-conspirator to enter his guilty plea was Samuel Monroe, Caraway's brother, who

7

entered into a plea agreement with the Government and pleaded guilty on February 22,

2017.   R. 211.

### 6.      Co-conspirator sentences

Caraway's co-conspirators were sentenced to terms of imprisonment ranging from

48 to 262 months.   PSR ¶ 10.   The sentences for each of Caraway's eight co-defendants

are summarized in the table below:

| Co-Defendant | Charge(s) | Sentence |
|---|---|---|
| Astin Allison<br>16CR30024-001 | Ct. 1: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine<br>Ct. 2: Interstate Travel in Support of Racketeering Enterprises | 09/08/2017: Sentenced to 151 months' imprisonment |
| Nahum Shibeshi<br>16CR30024-002 | Ct. 1: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine<br>Ct. 2: Interstate Travel in Support of Racketeering Enterprises | 08/11/2017: Sentenced to 48 months' imprisonment |
| Terrance Miles<br>16CR30024-003 | Ct. 1: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine<br>Ct. 2: Interstate Travel in Support of Racketeering Enterprises | 09/29/2017: Sentenced to 121 months' imprisonment_ |
| Victor Johnson<br>16CR30024-004 | Ct. 1: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine | 05/10/2018: Sentenced to 188 months' imprisonment |
| Jamie Green<br>16CR30024-005 | Ct. 1: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine | 11/30/2017: Sentenced to 262 months' imprisonment |
| Rodney Smith<br>16CR30024-006 | Ct. 1: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine | 06/16/2017: Sentenced to 147 months' imprisonment |
| Samuel Monroe<br>16CR30024-007 | Ct. 1: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine | 06/09/2017: Sentenced to 168 months' imprisonment |
| Dana Bell<br>16CR30024-008 | Ct. 1: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine | 08/11/2017: Sentenced to 87 month's imprisonment |

### B.     Caraway's (short-lived) cooperation with the Government

Meanwhile, Caraway was watching the case progress from afar, aware that his former associates had been arrested, charged, and pleaded guilty.   He retained an attorney—who also represented Shibeshi—and began communicating with the Government, through counsel, about possible cooperation.   *See* R. 520-1; PSR ¶ 34; Sent. Tr. at 28:7-10.   By April 2017, the Government communicated explicitly to Caraway's attorney that Caraway would soon be indicted.   R. 520-1.   Then, in May 2017, Caraway voluntarily traveled to the Southern District of Illinois and participated in a proffer interview.   Sent. Tr. at 28:20-24.   Because of his (apparent) ongoing cooperation, Caraway was not arrested at that time and was allowed to return to Houston after the interview.

### C.     Texas robbery and Government's demand to self-surrender

In September 2017, the Government learned that Caraway had been arrested in Houston after participating in a violent armed robbery and home invasion.   Sent. Tr. at 29:23-30:5; R. 530-1; PSR ¶ 65.   Caraway and three accomplices stole $9000 in cash and four firearms, after violently assaulting the homeowner, C.M.   R. 530-1.   Caraway held the homeowner's wife and daughter hostage at gunpoint while his accomplices beat and kicked C.M. about the face and head.    *Id.*

After the Government learned of Caraway's involvement in the Texas robbery, the prosecuting AUSA notified Caraway—through his attorney—that his indictment was imminent and demanded that Caraway arrange to turn himself in to law enforcement no later than December 15, 2017.   R. 520-3.   The AUSA communicated this information to

Caraway's attorney both by telephone and email.     *Id.*

### D.     Caraway charged by superseding indictment

The December 15 deadline came and went with no response from Caraway.     On January 4, 2018, Caraway was charged by superseding indictment with one count of conspiracy to distribute cocaine.     R. 411.     At some time after his proffer interview and before his indictment, Caraway abruptly ceased all communication with the Government and, apparently, with his own attorney.     PSR ¶ 34.

### E.     Efforts to apprehend Caraway

Upon determining that Caraway was a fugitive, the United States Marshals Service (USMS) expended significant resources attempting to locate and apprehend him. Because Caraway had most recently been arrested in Houston in connection with the Texas armed robbery, primary responsibility for the investigation was transferred to USMS's Houston office.     R. 530-3; Sent Tr. at 11-13. USMS efforts to locate Caraway included physical surveillance, interviews, and regular checks of electronic commercial databases.     Despite these efforts, Caraway successfully evaded arrest for three and a half years.     R. 530-3; Sent Tr. at 13-16, 25.

### F.     Caraway's arrest in Texas

On July 15, 2021, Caraway was arrested by a trooper with the Texas Department of Public Safety after a routine traffic stop in Chambers County, Texas, just outside Houston.     Sent. Tr. at 16:25-17:13; R. 520-4.     The trooper observed a vehicle driven by Caraway driving in excess of the speed limit and weaving in and out of heavy traffic.     R.

10

520-4.   After the trooper pulled him over, Caraway made deliberate, persistent efforts to conceal his true identity.   When the trooper asked for his license and proof of insurance, Caraway denied having his wallet.   *Id.*   When instructed to write down his name, Caraway wrote "Bolen, Troy" and provided a false date of birth.   *Id.*   After the trooper attempted unsuccessfully to find "Troy Bolen" in the police database, he asked Caraway to provide his driver's license number or social security number, but Caraway denied remembering either.   *Id.*   The trooper asked Caraway to confirm the spelling of his name.   *Id.*   The trooper threatened to call a mobile fingerprinting unit to the scene if Caraway did not provide accurate identification.   *Id.*   Caraway again stated his name was "Troy Bolen."   *Id.*   Once more the trooper asked Caraway's name and, yet again, he lied, now saying his name was "Samuel Ruben Daniels."   *Id.*   Only after the trooper also failed to verify this name in the police database did Caraway finally provide his real name.   *Id.*   At that time, Caraway admitted that the reason he attempted to conceal his identity is because he knew there were active warrants for his arrest.   *Id.*   Caraway was arrested for intentionally providing false information.   *Id.*   During a search incident to arrest, the trooper found nearly $2000 in cash on Caraway's person.   *Id.*

### G.    Caraway pleads guilty

Caraway pleaded guilty to the superseding indictment on March 23, 2022.   R. 504. He pled without a plea agreement but did enter into a stipulation of facts with the Government.   *Id.*; R. 505. Caraway stipulated, *inter alia*, that he supplied and "was responsible for distributing at least 50 kilograms but less than 150 kilograms of cocaine

11

from August 1, 2014, through December 3, 2015." *Id.*

### H.      Presentence Investigation Report

A probation officer prepared a Presentence Investigation Report (PSR).   R. 510. Based on interviews with Caraway's co-conspirators, the PSR determined that the quantity of drugs trafficked by Caraway, and constituting relevant conduct for the offense, was 125 kilograms of cocaine.   PSR ¶ 35.   The PSR expressly noted this was a "conservative estimate" of the total quantity of cocaine involved in the conspiracy, because it did not include any amount of the cocaine trafficked by Caraway's organization to Georgia, Louisiana, or Ohio.   *Id.*   This drug quantity resulted in a base offense level of 34.   PSR ¶ 47.   Based on his role as the principal supplier of cocaine for the conspiracy, and his co-conspirators' statements identifying him as the leader of the trafficking operation, the PSR enhanced Caraway's total offense level by four levels because of his role as a leader/organizer, pursuant to USSG §3B1.1(a).   PSR ¶ 13, 36, 50. The PSR also enhanced Caraway's total offense level by two levels for obstruction of justice, under USSG §3C1.1.   PSR ¶ 51.   Regarding the obstruction of justice enhancement, the PSR found that:

> The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice when the defendant ceased contact with the government and its agents following his May 2017 interview. The defendant successfully evaded arrest for approximately 42 months following his indictment.   Significant governmental and law enforcement resources were expended to attempt to arrest Caraway on the federal warrant which obstructed the investigation, prosecution, and sentencing of the defendant.

PSR ¶ 43.   Finally, the PSR determined that Caraway was entitled to a two-level

reduction in his total offense level for acceptance of responsibility, under USSG §3E1.1(a). PSR ¶ 44, 54.   This resulted in a final offense level of 38.   PSR ¶ 55.

Caraway had prior convictions for aggravated robbery, evading arrest, possession of a controlled substance, and illegal dumping.   PSR ¶ 58-61.   Based on these convictions, the PSR assessed four criminal history points, which placed Caraway in Criminal History Category III.   PSR ¶ 62.   With a total offense level of 38, and Criminal History Category III, Caraway's Guideline sentencing range was 292-365 months.   PSR ¶ 95.

### 1.    PSR objections

Both Caraway and the Government filed objections to the PSR.   The Government objected arguing that Caraway should not receive any offense level reduction for acceptance of responsibility because he had engaged in willful obstruction of justice. R. 517.   The Government also argued that Caraway should have received an enhancement for use of a firearm in the offense, based on co-conspirator Smith's possession of a firearm. R. 521.

Caraway objected to the PSR's determination that he obstructed justice.[3]   R. 518.

### I.    Sentencing Hearing

On June 21, 2022, the district court held a sentencing hearing.   R. 534; Sent. Tr. At the hearing, the Government offered testimony from two witnesses in support of the

---

[3] Caraway filed one additional PSR objection (regarding his eligibility for the additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b)), but withdrew this objection prior to sentencing.   *See* R. 531.

contested obstruction of justice enhancement.

### 1.     Testimony of Sgt. Gregory Hosp

Sergeant Gregory Hosp, a former Drug Enforcement Agency task force officer, provided testimony regarding Caraway's abrupt cessation of communication with government agents when his indictment was imminent.   Sent. Tr. at 26-30.   Hosp testified that Caraway was communicating with the Government, through counsel, leading up to the proffer interview in May 2017.   *Id.* at 28:7-10.   Hosp was present at Caraway's proffer interview, and testified that Caraway knew, as of that date, that he would be charged for his role in the cocaine-trafficking conspiracy.   *Id.* at 28:11-29:22. Hosp further testified that, after the Government learned of Caraway's involvement in the Texas armed robbery, Caraway was given a deadline to turn himself in.   *Id.* at 29:23-30:18. Hosp, along with other DEA agents, traveled from Illinois to Houston to locate Caraway.   *Id.* at 30:19-32:16. While in Houston, Hosp and other agents surveilled the residence of Caraway's ex-wife for two days, conducting surveillance for "numerous hours, both days."   *Id.* at 32:7-13.   They did not apprehend Caraway at that time.

### 2.     Testimony of Deputy Chad Uhl

USMS Deputy Chad Uhl testified at the sentencing hearing regarding law enforcement's efforts to find and arrest Caraway after he abruptly ceased communication and the self-surrender deadline expired in December 2017.   Sent Tr. at 9-16.   Uhl explained how primary responsibility for the USMS fugitive investigation of Caraway transferred to the USMS Houston office, since that was his last known place of residence. *Id.* at 12:2-13:12. Uhl testified that USMS deputies in Houston, in 2019, conducted physical

surveillance at multiple locations Caraway was suspected to reside or frequent.   *Id.* at 13:13-14:3.  The surveilled locations included the residence of Caraway's daughter, Miracle Caraway, and two different addresses of Caraway's ex-wife, Passion Smith.[4]   *Id.* at 13:24-14:3; 15:7-14.    Agents surveilled these addresses for "multiple days over multiple weeks" but did not locate Caraway.[5]   *Id.* at 14:4-10.   Agents also conducted interviews with Ms. Caraway and Ms. Smith, both of whom denied having spoken to Caraway since 2017.   *Id.* at 14:11-20; R. 530-3.

Uhl also testified regarding the Government's attempts to track Caraway through electronic database searches.    Sent. Tr. at 15:15-16:21. Uhl routinely checked commercial databases for any activity in Caraway's name, including the use of a credit card, opening a new line of credit, obtaining a new driver's license, or activation of a utility or cable service.   *Id.* at 15:15-16:14. Uhl testified that he ran these commercial database checks approximately monthly throughout the 2½ years he was assigned to Caraway's case.   *Id.* at 10:15-20; 25:14-23.    Finally, Uhl offered testimony, based on his review of the Texas Department of Public Safety arrest report, regarding Caraway's ultimate arrest in Texas in July 2021.   *Id.* at 16:22-17:13.

### 3.    District Court overrules PSR objections

Caraway did not present any evidence or call any witnesses at the sentencing

---

[4] One of the surveilled addresses, 9831 Piave Drive, was the same address where Caraway was found and arrested by Houston police in September 2017 after Caraway's involvement in an armed robbery. *See* R. 530-1 at 18-19; Sent. Tr. at 13:20-23.

[5] Caraway argues that Deputy Uhl "did not know the number of times those addresses were surveilled or the duration of the surveillance."   Appellant's Br., at 7.   But Uhl expressly testified that the surveillance spanned "multiple days over multiple weeks."   Sent. Tr. at 14:4-10.

hearing.   After the Government's witnesses, and after hearing argument on each of the contested objections, the district court overruled all of the objections—including Caraway's objection to the obstruction enhancement—and adopted the PSR's findings. Sent. Tr. at 60-81.   The district court provided a detailed explanation for its ruling on each of the contested objections.   *Id.* at 77-80.   Regarding the obstruction of justice enhancement, the district court stated:

> Now with respect to the obstruction of justice enhancement and the defendant's objection to that, I do think [the PSR] got that one right as well. … This does fall into the category of calculated evasion. It wasn't a panicked, instinctive flight, but certainly there was a significant amount of time that Mr. Caraway, who knew he was being investigated and was going to be -- probably had been indicted, successfully evaded law enforcement. And based on the testimony here, there were a number of efforts made throughout that period of time to locate him. And if -- as if that wasn't enough, then providing false names to law enforcement once he was stopped, ceasing contact with everyone, not even accounting to what his attorney may or may not have told him at that point. But certainly there was a burden on the criminal investigation and the prosecution of this offense.

*Id.* at 78:25-79:19.

Having overruled all of the objections, the district court found that the Caraway's final Guideline sentencing range—consistent with the PSR—was 292 to 365 months.   *Id.* at 81:3-9.   The district court did expressly note that, had it ruled in Caraway's favor on the obstruction of justice enhancement, the resulting Guideline sentencing range would have been 235 to 293 months.   *Id.* at 103:16-24.

### 4.     Sentencing colloquy and imposition of sentence

After hearing argument from the parties regarding application of the § 3553(a) sentencing factors, the district court imposed a sentence of 360 months' imprisonment.

Sent. Tr. at 108:13-18.   In its sentencing colloquy, the district court provided its own

assessment of the § 3553(a) factors in relation to the facts and circumstances of the case.

*Id.* at 103-108.   The district court first noted Caraway's role in the offense, finding that

he

> was the leader and organizer of a large-scale drug trafficking organization,
> sourced by members of the Mexican Gulf Cartel that was involved in multi-
> state deals transporting narcotics. He was a sophisticated operator, ran all
> of this with people beneath him from a distance. He was by far, in the
> Court's assessment, the most culpable … of the codefendants and the others
> involved in this case.

*Id.* at 105:7-14.   The district court then considered the scope of the relevant conduct,

noting that a "conservative estimate" of the amount of cocaine involved was "125

kilograms with a street value of over $4 million."   *Id.* at 105:15-22.   The district court

noted Caraway's three-and-a-half-year evasion of arrest, his role in the violent Texas

armed robbery, and his conduct at the time of his arrest in Texas.   *Id.* at 105:23-106:16.

The district court also considered the need for the sentence to reflect the seriousness of

the offense, promote respect for the law, provide just punishment, and to provide for

specific and general deterrence.   *Id.* at 106:17-107:3. Finally, the district court expressly

stated that it believed a sentence of 360 months was necessary to achieve the goals of

sentencing, and thus would have imposed the same sentence even if its rulings on the

contested objections were wrong and the Guidelines range came out differently:

> I think anything more than 360 months would be greater than necessary.
> And anything less, even if the Court's calculation of the guideline range is
> incorrect, would not meet the sentencing goals of 18 United States Code
> Section 3553.   So I want to be very clear.   This would be my sentence even
> if my rulings on the objections are wrong and the guideline range would be
> something else.   I believe 360 months on a drug crime is the most that I

17

have ever imposed, and that's only a time or two.     And certainly given the extensive nature of this drug trafficking organization, that is appropriate.

Sent. Tr. at 107:13-22.

### J.     Judgment and appeal

Written judgment was entered on June 22, 2022.   R. 538.   On June 29, 2022, Caraway filed notice of the instant appeal in the district court.   R. 540.   On November 1, 2022, Caraway filed his opening brief.   Doc. No. 13.   Caraway raises only a single, narrow issue on appeal—challenging the district court's application of the Guidelines offense level enhancement for obstruction of justice.   *See generally* Appellant's Br.

## SUMMARY OF ARGUMENTS

Samuel Caraway abruptly disappeared after his multi-state spanning, multimillion-dollar cocaine trafficking operation was busted by the DEA, his eight co-conspirators were each indicted, arrested, and, one-by-one, pled guilty, and after Caraway himself was expressly informed that he too would soon be charged. He then successfully evaded arrest for more than three and a half years. After he was finally caught and brought to justice, the district court determined at sentencing that Caraway's evasion of arrest constituted obstruction of justice within the meaning of USSG § 3C1.1. That finding was not clearly erroneous. The evidence presented at sentencing supports an inference that Caraway's abrupt cessation of communications, his avoidance of usual places and associates, and his refraining from traceable commercial activity constituted willful, calculated evasion of arrest. And Caraway's actions when finally arrested unmistakably demonstrate that he was willfully evading arrest. Caraway repeatedly provided the arresting officer with false identification and admitted that he attempted to conceal his identity because he knew there were warrants for his arrest. Caraway's three-and-a-half-year evasion of arrest significantly burdened the prosecution, both in delay and expense. In sum, the evidence plainly supports an inference that Caraway willfully obstructed justice by evading arrest.

Even if this court should determine that the district court clearly erred by applying the obstruction of justice enhancement, the court should still affirm because any such error was harmless. In sentencing Caraway to 360 months' imprisonment, the district court unequivocally stated that it would impose the same sentence even if its ruling on

the contested obstruction enhancement was incorrect.    The district court adequately explained the basis for this parallel result, accurately calculated the Guideline range that would apply if it had ruled in Caraway's favor on the obstruction enhancement, and thoroughly justified its choice of sentence under the § 3553(a) factors—expressly stating that any term of imprisonment less than 360 months would be insufficient to achieve the goals of sentencing.    Accordingly, any remand to the district court for resentencing would be pointless, and any error in applying the obstruction enhancement was therefore harmless.    The judgment of the district court should thus be affirmed.

**ARGUMENT**

III. **The district court did not clearly err in finding that Caraway willfully obstructed justice.**

    A.     **Introduction**

Caraway's sole argument on appeal is that the district court erred in calculating his Guidelines sentencing range by applying the two-level enhancement for obstruction of justice. Caraway's argument lacks merit and the judgment of the district court should be affirmed. The Government's evidence demonstrates that Caraway willfully obstructed justice, within the meaning of USSG § 3C1.1, by engaging in calculated evasion of arrest.

    B.     **Standard of Review**

This Court reviews a district court's finding of obstruction of justice for clear error, "giving deference to the district court's application of the guidelines to the facts." *United States v. Arceo*, 535 F.3d 679, 687 (7th Cir. 2008); *United States v. Cisneros*, 846 F.3d 972, 975 (7th Cir. 2017); *see also United States v. Draves*, 103 F.3d 1328, 1337 (7th Cir. 1997) ("A sentencing court's decision on whether a defendant obstructed justice under § 3C1.1 is a finding of fact, which we uphold unless clearly erroneous.").

"Clear error is an extremely deferential standard of review, and will only be found to exist where the 'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir.2006) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). So long as the "district court's account of the evidence is plausible in light of the record viewed in its entirety," there is no clear error, and the reviewing court must affirm. *Id.*

21

### C.     Evidence shows that Caraway willfully obstructed justice by evading arrest.

In overruling Caraway's objection to the obstruction enhancement, the district court expressly adopted the PSR's findings as to obstruction of justice.    Sent. Tr. at 80:16-19.    In relevant part, the PSR determined that Caraway "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice" by "successfully evad[ing] arrest for approximately 42 months following his indictment." PSR ¶ 43.    The district court did not clearly err in adopting the PSR's position and finding that Caraway willfully obstructed justice by evading arrest.

It is well-established in this Circuit that willful evasion of arrest constitutes obstruction of justice, even where the defendant has not yet been indicted.    *See United States v. Porter*, 145 F.3d 897, 903 (7th Cir. 1998).    The "ultimate question" in determining the appropriateness of the § 3C1.1 obstruction enhancement, is "whether the defendant's conduct evidences a *willful* intent to obstruct justice." *Id.* (emphasis added); *see also Arceo*, 535 F.3d at 687.    In *Porter*, this court affirmed § 3C1.1 enhancement where a defendant fled the jurisdiction after learning that he was about to be indicted, only to be found and arrested a month later.    *Id.* at 902.    The Court observed that the defendant's conduct "was a calculated and deliberate plan to evade the authorities where an indictment was imminent." *Id.* at 904.    Accordingly, the court held that the defendant's conduct "qualifie[d] as a willful obstruction or attempt to obstruct justice under section 3C1.1 despite the fact that [he] was not yet under arrest or in custody at the time of his flight." *Id.*; *see also United States v. Williams*, 294 F. App'x 336, 337 (9th Cir. 2008) ("The fact that

Williams was not arrested prior to his flight does not change the analysis; neither U.S.S.G. § 3C1.1 nor its comment note 4(e) contains a requirement of prior arrest, and the guideline itself recognizes that conduct impeding an investigation may merit the enhancement.").

Caraway argues that the district court erred in finding that he willfully evaded arrest because the Government failed to produce any evidence showing that Caraway was aware he was about to be indicted. In other words, Caraway suggests there is no evidence of willfulness because there is no evidence Caraway knew the Government was seeking his arrest. Caraway is mistaken. Both direct and circumstantial evidence show that Caraway knew he was about to be indicted in January 2018. First and foremost, on November 30, 2017, the Government explicitly notified Caraway, via his attorney, that indictment was imminent and demanded his self-surrender. R. 520-3. The prosecuting AUSA communicated this information to Caraway's counsel both by telephone and in writing (by email) on that date. *Id.* Caraway argues that the Government has not shown that the information relayed to his attorney actually reached him, or that the attorney even still represented him at that time. Of course, because of the attorney-client privilege, any direct evidence of this would be in Caraway's exclusive control. However, circumstantial evidence clearly shows that the message reached Caraway. First, if the attorney no longer represented Caraway on November 30, 2017, the attorney would have had an ethical obligation to inform the AUSA as much when they spoke on the phone that day. That did not happen. And, indisputably, the attorney still represented Caraway earlier that year, when he appeared with Caraway for the proffer interview in May 2017. *See* R. 520-1; Sent. Tr. at 28:11-24.

23

Caraway's participation in the proffer interview is further evidence that he was aware indictment was imminent. Caraway's attorney also represented another defendant in the case, Nahum Shibeshi, who, as of April 2017, had already been indicted, pled guilty, and was nearing sentencing. R. 520-1. Thus, Caraway had access, via his attorney, to all of the Government's discovery in the case. Caraway, who was apparently watching the case closely (and would have seen each of his former co-conspirators, one-by-one, plead guilty), began communicating with the Government through his attorney. Sent. Tr. at 28:7-10. Then, in May 2017, Caraway traveled to the Southern District of Illinois to participate in the proffer interview. *Id.* at 28:20-24. A DEA task force officer who participated in that proffer interview testified explicitly that Caraway was aware at that time that he was going to be charged. *Id.* at 29:15-19.

Even if, as Caraway insinuates, he did not receive the message regarding self-surrender in November 2017 because he had *already* stopped communicating with his attorney, the circumstances nevertheless support an inference that he knew indictment was imminent. As noted above, Caraway knew he was going to be charged when he participated in the proffer interview. He knew the strength of the Government's case via access to discovery and had seen each of his former co-conspirators plead guilty. Caraway's abrupt cease of communications—whether it occurred before or after his attorney relayed the Government's self-surrender demand—further shows Caraway knew he would be indicted, and suggests that he had already decided to evade arrest.

Finally, the district court did not clearly err in finding that Defendant willfully evaded arrest because Caraway admitted as much when he was finally arrested in July

2021.   When Caraway was stopped by Texas police for a traffic violation, he repeatedly gave a false name and also provided a false date of birth.   R. 520-4 at 1.   When the officer ascertained that the provided identification was false, Caraway finally gave his real name and *admitted that the reason he lied was because he knew there were warrants for his arrest.   Id.*   With this statement, Caraway resolved any doubt as to whether he knew he had been indicted.   By deliberately providing a false identification, knowing there were active warrants for his arrest, Caraway willfully attempted to evade arrest. Accordingly, the district court did not clearly err in finding that Caraway's obstruction of justice was willful.

### D.   Evidence shows that Caraway's evasion of arrest was calculated, and not merely panicked or instinctive flight.

Both the Application Notes to USSG § 3C1.1 and decisions of this court make clear that not every attempt to flee or avoid arrest constitutes obstruction of justice.   In fact, Application Note 5(D) provides that avoiding or fleeing from arrest will "ordinarily" not merit § 3C1.1 enhancement.   However, as this Court has observed, "ordinarily" is an important hedge word.   *United States v. Nduribe*, 703 F.3d 1049, 1051 (7th Cir. 2013) (suggesting that Application Note 5(D) should perhaps "be read as limited to leaving the scene of an arrest or an attempt at arrest, as distinguished from protracted flight").   In practice, this court has regularly affirmed § 3C1.1 enhancement where the defendant has attempted to flee or evade arrest, Application Note 5(D) notwithstanding.   *See, e.g., Porter*, 145 F.3d at 904; *Arceo*, 535 F.3d at 687; *Cisneros*, 846 F.3d at 977.

In its decisions interpreting § 3C1.1, this court has drawn a line between "panicked, instinctive flight" and "calculated evasion."   *See, e.g.*, *United States v. Curb*, 626 F.3d 921, 929 (7th Cir. 2010); *Porter*, 145 F.3d at 902-03.   While the former does not not warrant enhancement under § 3C1.1, the latter is obstruction of justice to which the enhancement applies.   *Arceo*, 535 F.3d at 687.

For example, in *United States v. Draves*, 103 F.3d 1328 (7th Cir. 1997), the court rejected application of the enhancement where the defendant, after being handcuffed and placed in the back seat of a police car, fled the car on foot only to be caught by arresting officers minutes later.   *Id.* at 1336-37.   The Court noted that the defendant's flight was "panicked" and occurred "spontaneously and without deliberation."   *Id.* at 1337.   On these facts, the court found that enhancement under § 3C1.1 was inappropriate. Conversely, in *Curb*, 626 F.3d at 928, this court affirmed enhancement under § 3C1.1 where the defendant failed to appear for his sentencing hearing, and eluded police until he was arrested two-and-a-half months later.   *Id.*   Distinguishing *Draves*, the court noted that the defendant was "well aware of his sentencing hearing," and thus his two-and-half-month evasion of arrest could "only be described as a 'calculated evasion of the criminal justice system.'"   *Id.* at 929.

Caraway argues that the Government failed to produce evidence of calculated flight or evasion of arrest in two respects.   First, Caraway argues that the Government failed to show that he ever left the Houston area, so there was no evidence of "flight" at all.   Second, he argues that the Government adduced no evidence of affirmative evasive

conduct, and so failed to show any calculated evasion. Caraway is wrong on both points.

Caraway makes much of the fact that, following his indictment, law enforcement believed he was still somewhere in the Houston area, and, relatedly, that he was finally arrested 42 months later in a county just outside Houston. These facts show, according to Caraway, that he never fled the jurisdiction and, thus, was not affirmatively evading arrest. Of course, only Caraway knows where he actually was during those 42 months. But even if he did remain in Houston, it does not follow that he was not engaging in calculated evasion of arrest.

Assuming Caraway did remain in Houston, his case is admittedly distinct from those where the court has found that a defendant's flight to a different jurisdiction (or country) constituted obstruction of justice. *See, e.g., Nduribe,* 703 F.3d at 1050 (defendant fled to Amsterdam via Nigeria); *Arceo,* 535 F.3d at 687 (defendant fled to Mexico); *United States v. Ranjel*, 872 F.3d 815, 820 (7th Cir. 2017) (same). But Houston, Texas has a population of over 2.2 million people[6]—certainly large enough to disappear into for a person determined to do so. To argue that a defendant must actually relocate from a city of that size in order to evade arrest within the meaning of § 3C1.1 is nonsensical. Furthermore, flight to another jurisdiction is simply not the *sine qua non* of obstruction of justice. Even unsuccessful *attempts* to evade arrest can constitute obstruction. Thus,

---

[6] Houston's population was 2,288,250 according to the most recently available census data. U.S. Census Data, July 2021 (*available at https://www.census.gov/quickfacts/houstoncitytexas*). The population of Harris County, Texas was over 4.7 million. *Id.* (*available at https://www.census.gov/quickfacts/harriscountytexas*).

the court affirmed § 3C1.1 enhancement in *Cisneros*, even though the defendant was apprehended *before* he could flee to Mexico.   846 F.3d at 975.   There is simply no basis in either this court's decisions or the text of § 3C1.1 to conclude that a defendant who willfully and *successfully* evades arrest in his home jurisdiction has not obstructed justice, while a defendant who *unsuccessfully* attempts to flee to another jurisdiction has.   After all, as noted above, "[t]he pertinent question under § 3C1.1 is whether the defendant's conduct evidences a willful intent to obstruct justice." *Arceo*, 535 F.3d at 687.

Caraway's more substantive argument is that the Government failed to adduce evidence showing that he took any affirmative action to evade arrest.   Essentially, Caraway argues that the district court clearly erred in determining that his evasion of arrest was calculated because the Government did not show *how* he evaded arrest.   The district court, adopting the PSR's position, disagreed.   The PSR found that Caraway, after his proffer interview

> ceased contact with agents, his attorney, and coconspirators. Despite attempts by the government and United States Marshals in Illinois and Texas beginning in 2018, the defendant was not located until July 2021. Substantial law enforcement resources were spent trying to locate Caraway including multiple surveillance details. Law enforcement also attempted to track COVID-19 stimulus payments, checked Caraway's telephone records, reached out to coconspirators, and interviewed Caraway's daughter and ex-wife. Caraway managed to avoid arrest by law enforcement and prosecution by the government until his arrest in Texas on July 15, 2021. Upon arrest, Caraway provided two false names and a false date of birth to law enforcement because he knew he was wanted on one or more warrants.

PSR ¶ 34.   During the sentencing colloquy, the district court made clear that, in its view, these facts showed calculated evasion:

> This does fall into the category of calculated evasion. It wasn't a panicked, instinctive flight, but certainly there was a significant amount of time that Mr. Caraway, who knew he was being investigated and was going to be — probably had been indicted, successfully evaded law enforcement. And based on the testimony here, there were a number of efforts made throughout that period of time to locate him. And if — as if that wasn't enough, then providing false names to law enforcement once he was stopped, ceasing contact with everyone, not even accounting to what his attorney may or may not have told him at that point.

Sent. Tr. at 79:3-13.   The district court's conclusion was not clearly erroneous.   The evidence adduced at the sentencing hearing demonstrates that Caraway engaged in a calculated effort to evade arrest and prosecution—an effort that proved successful for three and a half years.

The totality of the evidence supports a reasonable inference that Caraway engaged in calculated evasion of arrest.   The evidence adduced at the sentencing hearing establishes the following: Caraway abruptly cut off communication with the Government and even his own attorney when informed that his indictment was imminent.   At approximately the same time, according to his daughter and ex-wife, he also stopped communicating with his own family members.   Law enforcement surveilled the homes of his ex-wife and daughter (where he had previously been found) for multiple days over multiple weeks, but never saw Caraway.   This evidence suggests that Caraway knowingly absconded, cutting off contact with known associates and avoiding his usual haunts in order to evade arrest.   This inference is further supported by Deputy Uhl's regular checks against electronic commercial databases.   Despite monthly checks for more than two years, Deputy Uhl never found any commercial activity in Caraway's name—not so much as a single credit card transaction.   This evidence supports an

29

inference that Caraway—who had already demonstrated his considerable savvy by orchestrating a multimillion-dollar drug-smuggling operation—was intentionally avoiding activity that could be tracked by law enforcement.   And when Caraway was finally pulled over by the Texas Department of Public Safety, he had a large quantity of cash on his person, he deliberately and persistently attempted to conceal his identity, and he admitted that he gave false names because he knew there were warrants for his arrest. The cash is further evidence that Caraway was knowingly avoiding traceable commercial activity.   The false identification is the critical piece of evidence that puts all the rest of the Government's evidence in context.

Caraway insists that "the only actual affirmative conduct" attributable to him is the false identification he provided at the time of his traffic arrest.   Appellant's Br., at 20-21.   And Caraway argues that providing false names at arrest only shows "panicked behavior" rather than calculated evasion.   *Id.* at 21.   Caraway's arguments miss the mark.   It is true that, "providing a false name or identification document at arrest" will "ordinarily" not constitute obstruction of justice under the Application Note.   USSG §3C1.1, Application Note 5(A).   But the Government does not suggest that Caraway obstructed justice *only* by giving a false name at the arrest scene.   Rather, as the PSR correctly found, Defendant's dishonesty and attempted obfuscation at the arrest scene show that he was knowingly evading arrest.   PSR ¶ 34 ("Caraway provided two false names and false date of birth to law enforcement *because he knew he was wanted on one or more warrants*.") (emphasis added).   Thus, Caraway's conduct at the arrest scene provides context for all that came before: Caraway's sudden cease of communications,

his absence from places he formerly frequented, and his cessation of traceable commercial activity.   Any of those things, alone, might be innocently explained.   But considered together, and especially in light of Caraway's active deception at the arrest scene, these pieces of evidence create a powerful inference that Caraway was knowingly and willfully evading arrest since his indictment.   The district court found this inference sufficiently compelling to find obstruction of justice.   *See* Sent. Tr. at 79:3-4 ("This does fall into the category of calculated evasion.").   For all the reasons addressed above, that finding was not clearly erroneous.   Accordingly, the district court's sentence must be affirmed.

### E.     Caraway's evasion of arrest was likely to, and did, significantly burden the prosecution.

At sentencing, the district court and both parties addressed the issue of obstruction of justice through the lens of whether Caraway engaged in "calculated evasion" of arrest. At the sentencing hearing, both the Government and Caraway argued for and against the obstruction enhancement in terms of whether Caraway's evasion of arrest was "calculated evasion" or "panicked flight."   *See* Sent. Tr. at 65:6-9; 68:4-6.   The district court applied the enhancement because it concluded that Caraway's actions did "fall into the category of calculated evasion."   *Id.* at 79:3-4.     For all the reasons addressed above, that finding was not clearly erroneous.

But recent decisions from this court have indicated that it is not the defendant's *state of mind* that determines whether evasion constitutes obstruction of justice, but only whether the defendant's actions were "likely to make the investigation or prosecution significantly more costly or less effective than it would otherwise have been."   *Nduribe*,

703 F.3d at 1053; *see also Cisneros*, 846 F.3d at 976 ("the proper question" in applying the obstruction enhancement is whether the evasive conduct is "likely to burden a criminal investigation or prosecution significantly").[7]   Thus, the court in *Cisneros* affirmed application of the enhancement where a defendant was apprehended at the airport with a one-way ticket to Mexico.   846 F.3d at 976-77.   Even though the defendant's attempted evasion was intercepted before it began, the court nevertheless held that the enhancement was appropriate because the abortive escape to Mexico, had it succeeded, "was highly likely to significantly burden the investigation or prosecution."   *Id.* at 972.

In the present case, Caraway's evasion of arrest not only was likely to, but in fact did, significantly burden the prosecution—both in terms of *delay* and *expense*.   Caraway significantly delayed the prosecution of this case by successfully evading arrest for three and a half years.   And significant law enforcement resources were expended attempting to bring Caraway to justice.   Accordingly, the district court correctly applied the obstruction of justice enhancement under the standard set forth in *Nduribe* and *Cisneros*.

First, Caraway's evasion of arrest significantly burdened the prosecution by *delay*. "It is difficult to imagine conduct that more clearly interferes with the administration of justice than a defendant's failure to be present." *United States v. Teta*, 918 F.2d 1329, 1335

---

[7] The status of pre-*Nduribe* decisions such as *Draves*, applying the "calculated-evasion"-versus-"panicked-flight" framework, is unclear.   *Nduribe* agreed with the holding in *Draves* but rejected its reasoning.   *Nduribe*, 703 F.3d at 1053 ("the ruling in *Draves* was correct, but not for the reasons given in the opinion").   However, "[i]n this circuit it takes a circulation to the full court under Circuit Rule 40(e) for one panel to overrule another." *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015).   Whether *Nduribe* and *Drave*s now represent conflicting or merely complementary standards is a question that need not be addressed in this case.   For the reasons set forth above, the § 3C1.1 enhancement was appropriately applied in this case under either standard.

(7th Cir. 1990).   This Court has repeatedly observed that a defendant obstructs justice when his actions *delay* prosecution.   *See, e.g., Teta*, 918 F.2d at 1335 ("When the disposition of the charges cannot proceed until the defendant's presence is secured, and when he must be brought to court under arrest, as transpired in this case, there is obstruction of justice."); *see also United States v. Bolden*, 279 F.3d 498, 502 (7th Cir. 2002) ("an upward adjustment for obstruction of justice is appropriate when a defendant's actions have had a 'delaying effect on the administration of justice'") (affirming § 3C1.1 enhancement where defendant's failure to appear resulted in delay of trial of only two months).

Caraway may argue that he had no obligation to turn himself in, even when he knew he had been indicted.   That is accurate, but misses the point.   "There's a difference between not making it easier for the police to arrest you and making it much harder for them to do so."   *Nduribe*, 703 F.3d 1051.   As discussed above, the evidence supports an inference that Caraway willfully cut off communications, changed his behavior, and avoided usual locations and associates for the purpose of evading arrest. He successfully evaded arrest until July 2021.   In one sense, the burden of that 3.5-year delay is self-evident.   *See id.* at 1051 ("we do not think proof that a five-year wild goose chase is a burden to law enforcement is necessary; the point is obvious").   But, as the Government argued at sentencing, the delay in this case burdened the prosecution in concrete, tangible ways.   *See* R. 530 at 9.   While Caraway was evading arrest, the presiding district court judge retired, and the case had to be re-assigned.   R. 444.   Rule 35 motions on behalf of numerous co-defendants had to be delayed in case Caraway

33

ultimately decided to go to trial.   R. 550-554.   In fact, in the time that Caraway was evading arrest, one co-defendant pleaded guilty, was sentenced, *completed* her sentence, and was released.   R. 444 at 9.   This meant the co-defendant was both less accessible to the Government as a trial witness and less likely to cooperate.   In sum, Caraway's evasion of arrest significantly burdened the prosecution by delay.

Caraway's evasion of arrest also significantly burdened the prosecution with additional *expense*.   Evasion of arrest constitutes obstruction of justice under § 3C1.1 whenever it was likely to, or did, "make the investigation or prosecution significantly more costly…than it otherwise would have been."   *Nduribe*, 703 F.3d at 1053.   Here, Caraway's evasion of arrest forced law enforcement to expend significant resources attempting to locate and apprehend him.   DEA agents and task force officers traveled from Illinois to Houston to locate him.   USMS deputies conducted physical surveillance in Houston for multiple days over multiple weeks.   Caraway's family members were interviewed.   And government manpower was expended to run monthly commercial database checks for more than two years.   All of this activity incurred real expense, and none of it would have been necessary had Caraway not evaded arrest.   Accordingly, Caraway's evasion of arrest significantly burdened the prosecution by both delay and expense, and the district court did not clearly err by applying the obstruction of justice enhancement.

Caraway argues that his actions did not "significantly hinder the investigation or prosecution" because, when he gave false names at the time of his traffic arrest, the trooper saw through the ruse and arrested Caraway "within minutes."   Appellant's Br.,

at 17.    Caraway asks this court to view his actions at the Texas roadside in isolation. While it is true that his attempts to continue evading arrest during the traffic stop proved unsuccessful, by July 2021, the damage had already been done.    Caraway had already delayed his prosecution by more than three years.    That makes the instant case completely distinguishable from the cases in which this court has reversed a district court's obstruction finding.    For example, in *Draves*, the defendant fled on foot from the back of a police car while still handcuffed.    *Id.* at 1336-37.    He was caught, unsurprisingly, "a mere three houses away from the scene of arrest."    *Id.* at 1337. Because this "pathetic effort at flight" only "delayed law enforcement…by seconds," it was not obstruction of justice.    *Nduribe*, 703 F.3d at 1052.    Similarly, in *Cisneros*, the court distinguished between the defendant's attempted flight on foot from the arrest scene (which was not obstruction of justice under § 3C1.1) and his attempted flight to Mexico when released (which was).    846 F.3d at 976.    The distinction is that only the latter, had it been successful, "was highly likely to burden the investigation or prosecution."    *Id.*

In contrast to *Cisneros*, this case affords the luxury of hindsight.    The Court need not determine whether Caraway's attempts at obfuscation during the Texas traffic stop were likely to be successful, and thus likely to "burden the investigation or prosecution significantly."    *Id.* at 976.    Because by July 2021, Caraway's three-and-a-half-year evasion of arrest had *already* significantly burdened the prosecution by delay and expense.    Thus, the district court did not clearly err in applying the § 3C1.1 enhancement, and the sentence should be affirmed.

II.    **Even if the district court erred in applying the obstruction of justice enhancement, any error was harmless because the District Court made clear it would have imposed the same sentence regardless of the outcome of the contested objection.**

A.    **Introduction**

For all the reasons set forth above, the district court did not clearly err in finding that Caraway willfully evaded arrest and that this conduct constituted obstruction of justice under § 3C1.1.   But even if this court determines that application of the obstruction enhancement was clearly erroneous, the court should still affirm because any such error was harmless.   The district court stated unequivocally that it would impose the same sentence, based on its discretionary application of the § 3553(a) factors, even if it was wrong about the § 3C1.1 enhancement.

B.    **An error in calculating the Sentencing Guidelines is harmless if it did not affect the sentence.**

A district court's first step in a sentencing proceeding is to accurately calculate the Guidelines range, and a failure to do so constitutes procedural error.   *United States v. Abbas*, 560 F.3d 660, 666 (7th Cir. 2009).   However, reversal is not warranted where the procedural error is harmless.   *Id.* at 668.   "[W]here the district court indicates that it would have imposed the same sentence regardless of any sentencing error, the error is harmless and a remand is not required." *United States v. Foster*, 701 F.3d 1142, 1157 (7th Cir. 2012); *see also United States v. Clark*, 906 F.3d 667, 671 (7th Cir. 2018) (noting that this court has "consistently concluded that where a district judge makes clear that he would have applied the same sentence irrespective of an auxiliary decision, any error in such a decision is harmless").   In the context of the Guidelines range, this court will find

harmless error "when the sentencing court 'expresses its determination to impose the same sentence even if it had gotten the calculations wrong.'" *United States v. Alvarez-Carvajal*, 2 F.4th 688, 693 (7th Cir. 2021) (quoting *United States v. Elder*, 900 F.3d 491, 503 (7th Cir. 2018)); *see also United States v. Hines-Flagg*, 789 F.3d 751, 757 (7th Cir. 2015) (district court's statement must be "unequivocal").

Recent decisions from this court have emphasized and reaffirmed the court's warning in *Abbas* that "a conclusory comment tossed in for good measure" will not serve to prove harmless error.   560 F.3d at 667; *see, e.g., United States v. Asbury*, 27 F.4th 576, 581 (7th Cir. 2022) ("we take this occasion to reiterate what we first said in *Abbas* and have repeated since: 'a conclusory comment tossed in for good measure" is not enough to make a guidelines error harmless.").   Rather, the district court must provide a "detailed explanation of the basis of the parallel result.," *Abbas*, 560 F.3d at 667, which "accounts for why the potential error would not 'affect the ultimate outcome.'" *Asbury*, 27 F.4th at 581-82 (quoting *United States v. Bravo*, 26 F.4th 387, 393 (7th Cir. 2022)).   And this explanation "must give specific (though not necessarily lengthy) attention to the contested guideline issue."   *Id.* at 581.

### C.   The district court specifically addressed the contested Guideline issue and adequately explained the basis of the parallel result.

Here, the district court stated unequivocally that it would impose the identical sentence of 360 months, based on its application of the § 3553(a) factors, even if it erred in calculating the Guidelines range:

> I think anything more than 360 months would be greater than necessary. And anything less, even if the Court's calculation of the guideline range is

incorrect, would not meet the sentencing goals of 18 United States Code Section 3553. *So I want to be very clear. This would be my sentence even if my rulings on the objections are wrong and the guideline range would be something else.*

Sent. Tr. at 107:13-19 (emphasis added).    This type of unequivocal statement of intent is precisely what this court has historically looked for in evaluating harmless error.    *See Hines-Flagg*, 789 F.3d at 757 ("When a Guidelines range is miscalculated, we have historically looked for an unequivocal statement by the sentencing court that it would have imposed the same sentence under a correct application to find harmless error."). Because the district court has already made clear that it would impose the same sentence on remand, "any remand …would be a 'pointless step.'" *United States v. Skaggs*, 25 F.4th 494, 501 (7th Cir. 2022) (quoting *United States v. Lovies*, 16 F.4th 493, 508 (7th Cir. 2021)). Further, the district court specifically addressed the contested guideline issue and provided a sufficiently detailed explanation of the basis of the parallel result.

### 1.    The district court specifically addressed the contested Guideline issue.

First, the district court adequately and specifically addressed the contested guideline issue.    At the sentencing hearing, there were three pending objections to the PSR: two from the Government (regarding acceptance of responsibility and use of a firearm) and one from Caraway (as to the obstruction enhancement).    The district court overruled all three objections and adopted the PSR's position in each instance.    In its sentencing colloquy, the district court specifically addressed and explained its reasoning for overruling each of the objections.    *See* Sent. Tr. at 77:23-80:20.    And in stating that it would have imposed the same sentence regardless, the district court mentioned the

objections specifically.   *Id.* at 107:13-19 ("This would be my sentence even if my rulings

on *the objections* are wrong and the guideline range would be something else.") (emphasis

added).   That is a sufficiently specific reference to the contested Guidelines issue in this

case, because the only objection ruling that could have further benefited Caraway,

relative to the actual final Guidelines range, was the obstruction enhancement.   Every

other objection ruling went in Caraway's favor.

### 2.     The District Court adequately explained the parallel result.

Not only did the district court specifically address the contested Guidelines issue,

the court also provided an adequate explanation for the parallel result.   First, the district

court accurately calculated the Guidelines range both *with and without* application of the

contested obstruction enhancement.   Regarding the actual final Guidelines range,

including the obstruction enhancement, the court stated:

> So there's obviously a number of factors here that I have to weigh, and of
> course I always have to start with consideration of the advisory guideline
> range, which again, based on my ruling on the objections, is 292 to 365
> months.

Sent. Tr. at 103:10-13.   And as to the Guidelines range that would have resulted had

Caraway's objections been sustained, the district court stated:

> But I note one of [Caraway's] objections was withdrawn, and so according
> to my calculations, [the Guideline range] would have simply been -- it
> would have been 235 to 293 months.

*Id.* at 103:19-21.   Those calculations are correct, and they show that the district court was

fully informed of how the opposite result on the contested obstruction issue would

impact the final Guidelines sentencing range.   This distinguishes the present case from

those cases where this court has held that a district court insufficiently explained its parallel result.    *See Asbury*, 27 F.4th at 583 (district court did not calculate or address Guidelines range that would have resulted from contested issue); *see also United States v. Bravo*, 26 F.4th 387, 397 (7th Cir. 2022) (noting that the district court's explanation "tells us nothing about…why a sentence so tied to one guidelines range would have come out the same way with a different starting point").

Second, the district court explained, in detail, and with express reference to the sentencing factors under 18 U.S.C. § 3553(a), why it would impose a sentence of 360 months regardless of the outcome of the contested objection.

> I think anything more than 360 months would be greater than necessary. And anything less, even if the Court's calculation of the guideline range is incorrect, would not meet the sentencing goals of 18 United States Code Section 3553. So I want to be very clear. This would be my sentence even if my rulings on the objections are wrong and the guideline range would be something else. I believe 360 months on a drug crime is the most that I have ever imposed, and that's only a time or two. And certainly given the extensive nature of this drug trafficking organization, that is appropriate.

Sent. Tr. at 107:13-22.    The district court unequivocally stated that "anything less" than a 360-month sentence "would not meet the sentencing goals" of 18 U.S.C. § 3553.    And given the district court's detailed analysis of the relevant § 3553(a) factors, that determination was not clearly erroneous.

The district court's sentencing colloquy addressed the relevant § 3553(a) sentencing factors in detail.    The court first considered the nature and circumstances of the offense, noting Caraway's leadership role in the "large scale drug trafficking operation," and finding that "[h]e was by far, in the Court's assessment, the most culpable

defendant of the codefendants and the others involved in this case." *Id.* at 105:7-14. The district court also weighed the seriousness of the offense, finding that a "conservative estimate" of the scope of the drug conspiracy included 125 kilograms of cocaine with a street value of over $4 million. *Id.* at 105:15-22. The district court specifically noted that this constituted "the most relevant conduct that I have seen in my eight years on the bench, certainly both with respect to the drug weight and the money that is involved." *Id.* Next, the court considered Caraway's history and characteristics, including the fact that Caraway evaded arrest for almost four years and "was charged with a violent armed robbery of another drug dealer, which occurred only months after he was told he would be indicted." *Id.* at 105:23-106:11. Given all of these factors, the district court concluded that the 360-month sentence was "needed to reflect the seriousness of this offense, promote respect for the law, provide just punishment" and afford both specific and general deterrence. *Id.* at 107:17-108:3. All of this analysis of the § 3553(a) factors immediately preceded the district court's express determination that "anything less [than 360 months], even if the Court's calculation of the guideline range is incorrect, would not meet the sentencing goals of 18 United States Code Section 3553." *Id.* at 107:13-16. The district court's explanation of the parallel result in this case, with its detailed consideration of the § 3553(a) factors, is thus comparable to the explanation this court recently upheld as sufficient in *Skaggs*, 25 F.4th at 501 (observing that the "[district] court explained how the sentence reflected the relevant 18 U.S.C. § 3553(a) factors").

In sum, the district court unequivocally stated that it would impose the same sentence, 360 months, even if it erred in applying the obstruction of justice enhancement.

For the reasons stated above, the district court's sentencing colloquy sufficiently explained the basis of this parallel result.    Accordingly, even if the district court erred in applying the obstruction enhancement, the error was harmless, *see Abbas*, 560 F.3d at 667, and the judgment of the district court must be affirmed.

## CONCLUSION

For the foregoing reasons, the United States respectfully asserts that the judgment and sentence of the district court must be affirmed.

**Respectfully submitted,**

**THE UNITED STATES OF AMERICA**

**RACHELLE AUD CROWE**
**United States Attorney**

/s/ *David D. Dean*

**DAVID D. DEAN**
**Assistant United States Attorney**
**Nine Executive Drive**
**Fairview Heights, Illinois 62208**
**(618) 628-3700**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), as modified by Circuit Rule 32(c), because this brief contains 10,872 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared using Microsoft Word 2016, in 12-point Book Antiqua font, a proportionally spaced typeface.

**Respectfully Submitted,**

/s/ *David D. Dean*

**DAVID D. DEAN**
**Assistant United States Attorney**
**Nine Executive Drive**
**Fairview Heights, Illinois 62208**
**(618) 628-3700**

43

IN THE

# UNITED STATES COURT OF APPEALS

### FOR THE SEVENTH CIRCUIT

_____

## No. 22-2146

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Appeal from the** |
| **Plaintiff - Appellee,** | ) | **United States District Court for** |
| | ) | **the Southern District of Illinois** |
| **v.** | ) | |
| | ) | **No. 3:16-CR-30024-NJR-009** |
| **SAMUEL RUBEN CARAWAY,** | ) | |
| | ) | **Honorable Nancy J. Rosenstengel** |
| **Defendant - Appellant.** | ) | **United States District Judge** |

### CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing and by placing said copy in a postpaid envelope addressed to the following:

Gregory N. Smith
Attorney at Law
Suite 1850
7733 Forsyth Boulevard
St. Louis, MO 63105

/s/ *David D. Dean*
**DAVID D. DEAN**
**Assistant United States Attorney**